

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

Laurie Selber Silverstein  
Chief Judge

824 N. Market Street  
Wilmington, DE 19801  
(302) 252-2900

February 26, 2024

**VIA CM/ECF**

Mark D. Collins, Esq.  
Robert C. Maddox, Esq.  
Richards, Layton & Finger, P.A.  
One Rodney Square  
920 North King Street  
Wilmington, DE 19801

Marc L. Antonecchia, Esq.  
Holland & Knight LLP  
31 West 52nd Street  
New York, New York 10019

Anna Rotman, Esq.  
Kirkland & Ellis LLP  
609 Main Street  
Houston, TX 77002

Michael S. Neiburg, Esq.  
Young, Conaway, Stargatt & Taylor, LLP  
Rodney Square  
1000 North King Street  
Wilmington, Delaware 19801

    Re:    Cornucopia Oil & Gas Company, LLC - Case No. 19-11781  
             Deutsche Oel & Gas S.A. - Adv. Proc. 20-50851  
             <u>Motion to Dismiss, Dkt. No. 16</u>

Dear Counsel:

    This is the Court's ruling after hearing oral argument on December 7, 2023. The Court is writing for the benefit of the parties and assumes familiarity with the adversary proceeding as well as the bankruptcy case of Cornucopia Oil & Gas Company, LLC, Case No. 19-11782.

    In this adversary proceeding, Plaintiff Deutsche Oel & Gas, SA sues Energy Capital Partners and various related entities which Plaintiff refers to collectively as ECP. Plaintiff is suing based on actions allegedly taken against its predecessor-in-interest Brutus, A.G., the owner (directly or indirectly) of all of the stock in three entities collectively referred to by the parties as Furie. Brutus was also a party to a certain pledge agreement with ECP Fund A, one of the ECP entities.

February 26, 2024
Page 2

    The Complaint sounds in three counts titled Fraudulent Inducement, Civil Conspiracy to Commit Fraud and Breach of the Implied Covenant of Good Faith and Fair Dealing. Defendants moved to dismiss the Complaint asserting that all three counts have been released by provisions in Furie's confirmed plan as each count asserts a cause of action that belonged to Furie. Defendants also move to dismiss Count III for failure to state a cause of action under Rule 12(b)(6). Except for Count III, the motion to dismiss rises and falls on whether Plaintiff's action is direct or whether the cause of action belonged to Furie. In other words, if the causes of action are property of the estate, then the motion should be granted. If not, the motion should be denied. I shy away from framing the analysis as whether the claim is direct or derivative because, as my colleague noted recently in *TPC Group*,[1] the word derivative has many meanings and can confuse the analysis.[2]

    The Third Circuit re-confirmed the standard applicable here in *Wilton Armetale*.[3] Only the debtor (or trustee) can prosecute a cause of action if the cause of action existed at the commencement of the case and the debtor could have asserted it on his own behalf.[4]

    The parties agree that the first prong is met; it is undisputed that the causes of action asserted in the complaint predate the filing of Furie's bankruptcy cases. As to the second prong, the Third Circuit instructs that it "hinges on whether the claim is 'general' to the estate or 'personal' to a specific creditor."[5] In determining whether a claim is "general" or "personal" a court is to focus on the theory of liability and not the nature of the injury. So, for example, claims alleging that third parties plundered the debtor's assets or wrongfully depleted the debtor's assets are general claims – that is, property of the estate. This is because the theory of

---

[1] *In re TPC Group, Inc.*, Case No. 22-10493, 2023 WL 2168045, at *9-10 (Bankr. D. Del. Feb. 22, 2023).

[2] In their papers, Defendants also move to dismiss on so-called subject matter jurisdiction grounds. This argument also hinges on whether Plaintiff is asserting direct claims or claims belonging to Debtors. There is no doubt, however, that Defendants are asking me to interpret a confirmed plan when they seek dismissal on the grounds that the claims are barred by the releases in it. In those circumstances, there is bankruptcy jurisdiction. *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 168-69 (3d Cir. 2004) ("[W]here there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation . . . of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy jurisdiction is normally appropriate.").

[3] *Artesanias Hacienda Real S.A. DE C.V. v. North Mill Capital, LLC (In re Wilton Armetale, Inc.)*, 968 F.3d 273 (3d Cir. 2020).

[4] *Id.* at 282 (quoting *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n.5 (3d Cir. 2002)).

[5] *Id.*

February 26, 2024
Page 3

recovery "is based on an injury to the debtor's estate that creates a secondary harm to all creditors regardless of the nature of their underlying claims against the debtor."[6]

When reviewing a complaint to determine whether the claims belong to a debtor and thus are property of the estate, it should be recognized that the same set of facts may give rise to some claims that are property of the estate and some that are not.[7]

Applying *Wilmer Armetale* here, I conclude that many of the facts alleged could give rise to claims that are property of the estate. For example, claims that the bankruptcy cases extinguished Brutus's equity interests in Furie and destroyed equity value is a claim belonging to Furie. Similarly, claims based on Ankura's alleged mismanagement of Furie belong to Furie. But, the complaint is murky enough that those same facts could give rise to claims under some theories of liability which are not property of the estate. In particular, Plaintiff asserts that:

- Brutus entered into the Pledge Agreement on the basis that ECP was acting in good faith. At that time, Brutus did not know that ECP intended to usurp control over Furie or otherwise take steps to eliminate Brutus's interest in the Collateral. Had Brutus known of ECP's plan, Brutus would not have entered into the Pledge Agreement.[8]
- Defendants failed to disclose material facts to Brutus to induce Brutus to approve the engagement of Ankura and [PetroTechnical Resources of Alaska, LLC], which enabled Defendants to exercise total control over Furie."[9]

These two statements suggest that Brutus was induced to take actions it would not have taken absent ECP's misrepresentations to Brutus, which resulted in a loss of control. A fraudulent inducement claim, if one exists, is a direct claim and an equity holder's right to manage (assuming it has one) is its own loss.[10] Similarly, any civil conspiracy to commit fraud based on those same facts is also a direct claim.

---

[6] *Id.* at 282-83 (quoting *Tronox Inc. v. KerrMcGee Corp. (In re Tronox, Inc.)*, 855 F.3d 84, 104 (2d Cir. 2017)).

[7] *See, e.g., CMS Investment Holdings, LLC v. Castle*, Case No. 9468-VCP, 2015 WL 3894021 (Del. Ch. June 23, 2015) ("Delaware courts 'have long recognized,' however, 'that the same set of facts can give rise to both a direct and a derivative claim.'") (quoting *Gentile v. Rosette*, 906 A.2d 91, 99 n.19 (Del. 2006) (quoting *Grimes v. Donald*, 673 A.2d 1207, 1212 (Del. 1996))).

[8] Compl. ¶ 33, ECF No. 13.

[9] *Id.* at ¶ 60.

[10] *See In re SemCrude L.P.*, 796 F.3d 310, 320 n.9 (3d Cir. 2015) ("[I]nducing a particular individual to purchase stock may be a direct injury if the fraud injures neither the shareholders collectively nor

February 26, 2024
Page 4

      While Defendants have raised serious questions about whether there is a cause of action for certain of the harm alleged, the only issue before me on Counts I and II is whether the claims state direct claims or claims that belong to Furie. I conclude that the facts pled in Counts I and II could give rise to direct claims and thus the Plaintiffs may proceed on the Complaint. Having concluded that, the Court will not countenance prosecution of any claims that belonged to Furie. On this front, however, a more developed record is required.

      As to Count III, a cause of action for breach of the covenant of good faith and fair dealing of a contract between two parties is a direct claim. Plaintiff argues that: (i) Brutus performed under the Pledge Agreement while Defendants did not deal fairly with Brutus;[11] and (ii) Plaintiff did not get the benefit of its Pledge Agreement.[12]

      New York recognizes an implied covenant of good faith and fair dealing in every contract, but it encompasses only what "a reasonable person in the position of the promissee would be justified in understanding [was] included [in the contract]."[13] While one party cannot destroy the right of the other to the fruits of the contract, obligations will not be implied that are inconsistent with the terms of the contract.[14] As discussed at argument, I am at a loss to understand what that benefit is. The Complaint does not allege facts detailing the benefit, but merely makes conclusory statements as to loss of benefit. Plaintiff's contention at the hearing that it did not expect that signing the Pledge Agreement could result in the loss of the pledged stock or loss of control is wholly at odds with the fundamental nature of a pledge agreement. Accordingly, I will dismiss Count III, but give Plaintiff an ability to amend the Complaint. While this Complaint has been pending for some time, Plaintiff has not yet had the benefit of this ruling and an opportunity to plead facts, if it can, showing what benefit it was deprived of.

---

the corporation.") (interpreting Oklahoma law); *Spinner Family Holdings Grp., Inc. v. GRG Chubb1 LLC (In re Garces Restaurant Grp., Inc.)*, Case No. 18-19054, 2019 WL 3002932, at *8 (Bankr. D.N.J. July 9, 2019) (analyzing *SemCrude* and holding that "fraudulent inducement appears to be a direct claim.").

[11] Compl. ¶ 67 ("ECP accepted Brutus's pledge of the Collateral under the Pledge Agreement as security for the Credit Agreement, but through its material omissions and other conduct executed a scheme to wrest control of [the Debtors] from Brutus.").

[12] Answering Br. at 25, ECF No. 19 ("[T]he complaint makes plain that by usurping control of [the Debtors], ECP clearly destroyed Brutus's right to benefit from the Pledge Agreement.").

[13] *Ferguson v. Lion Holding, Inc.*, 478 F.Supp.2d 455, 469 (S.D.N.Y. 2007) (quoting *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) (internal citations and quotations omitted)).

[14] *Id.*

February 26, 2024
Page 5

    An Order will follow.

Very truly yours,

*[signature]*

Laurie Selber Silverstein

LSS/cmb