# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> CORNUCOPIA OIL & GAS COMPANY, LLC <br><br> Debtor. | Chapter 11 <br><br> Case No. 19-11782 (LSS) |
| DEUTSCHE OEL & GAS S.A. <br><br> Plaintiff, <br><br> v. <br><br> ENERGY CAPITAL PARTNERS, MEZZANINE OPPORTUNITIES FUND A, L.P., ENERGY CAPITAL PARTNERS, MEZZANINE OPPORTUNITIES FUND, LP, ENERGY CAPITAL PARTNERS, MEZZANINE OPPORTUNITIES FUND B, LP, ENERGY CAPITAL PARTNERS, MEZZANINE (ALASKA MIDSTREAM COINVEST) LP, ENERGY CAPITAL PARTNERS, MEZZANINE (ALASKA MIDSTREAM COINVEST) II, LP, <br><br> Defendants. | Adv. No. 20-50851 (LSS) |

**DEFENDANTS' (I) OBJECTION TO PLAINTIFF'S MOTION TO SUBSTITUTE PLAINTIFF AND (II) MOTION TO DISMISS PLAINTIFF'S CLAIMS AS PRECLUDED**

RLF1 31256315v.1

Through the assignments of Plaintiff Deutsche Oel & Gas, S.A.'s ("DOGSA" or "Plaintiff") claims to Alecto Limited ("Alecto") and then on to Alecto Capital, LLC ("Alecto Capital"), Plaintiff has now come full circle in relitigating released claims against Defendants Energy Capital Partners Mezzanine Opportunities Fund A, LP, Energy Capital Partners Mezzanine Opportunities Fund, LP, Energy Capital Partners Mezzanine Opportunities Fund B, LP, Energy Capital Partners Mezzanine (Alaska Midstream Co-Invest), LP, and Energy Capital Partners Mezzanine (Alaska Midstream Co-Invest) II, LP, (collectively, "ECP") that Bruce Webb ("Webb"), the *sole owner* of Alecto Capital, settled in this Court *years* ago. While typically a plaintiff's claims are freely assignable, DOGSA's assignments to Alecto and then again to Alecto Capital are wholly improper based on the terms of its own assignment agreement, the terms of Webb's settlement agreement, and critically, the legal principle of claim preclusion. For these reasons, ECP asks that the Court deny Plaintiff's Motion to Substitute Plaintiff [A.D.I. 44] (the "Motion to Substitute") as improper or, alternatively, dismiss the assigned claims as precluded.

## RELEVANT FACTUAL BACKGROUND

On May 29, 2024, Plaintiff filed a letter notifying the Court of DOGSA's October 28, 2022 assignment of its claims to Alecto and Alecto's subsequent January 1, 2024 assignment of its claims to Alecto Capital (the two assignments together, the "Assignments," and each, an "Assignment"). [A.D.I. 41]. Typically, a plaintiff's claims can be freely assigned (and indeed, ECP did not oppose Brutus AG f/k/a Deutsche Oel & Gas AG's ("Brutus") September 26, 2019 assignment of its claims to DOGSA), but these Assignments are not typical. First, ECP was not made aware of either of the Assignments until *a year-and-a-half* after the first Assignment occurred. [A.D.I. 42 at 1]. When asked why the Assignments were hidden from ECP for eighteen

months, Plaintiff's latest counsel[1] informed ECP that it was an "oversight" by DOGSA. [A.D.I. 42-1 at 1]. Even more bizarrely, it appears Plaintiff's own *lawyers* were not made aware of the Assignments until after February 26, 2024. [A.D.I. 41 at 1].

Plaintiff's current counsel also informed ECP that "Plaintiff anticipates Bruce Webb will be the plaintiff's primary corporate representative." [A.D.I. 42-1 at 1]. Since filing its June 18, 2024 letter, ECP has also ascertained through its own investigation that Webb is the sole managing member of Alecto Capital, with filings for the entity reflecting that Webb holds **one hundred percent ownership**—another fact that Plaintiff failed to bring to the Court's or ECP's attention. *See* Biennial Report, Alecto Capital (Mar. 12, 2024), attached hereto as **Exhibit A**. Indeed, Plaintiff's July 8, 2024 letter to the Court rejects ECP's concerns about Webb's involvement as "premature" given Webb has not yet been formally designated as Alecto Capital's corporate representative, wholly omitting the fact that Webb and Alecto Capital are *one and the same*. [A.D.I. 43 at 2].

The allegations Plaintiff asserts in this proceeding are familiar to the Court. Indeed, Webb himself, along with the Webb Family Trust, previously asserted claims against ECP in the chapter 11 proceedings of Furie Operating Alaska, LLC ("Furie"), Cornucopia Oil & Gas Company, LLC, and Corsair Oil & Gas LLC (the "Furie Bankruptcy"), certain of which are *identical* to the claims Plaintiff asserts here. [*See* Bankr. D.I. 282]. Webb settled his claims against ECP *years* ago, "voluntarily and knowingly forever releas[ing] unconditionally, waiv[ing], discharg[ing], and hold[ing] harmless" ECP from "any and all claims, demands, obligations, debts, sums, damages, attorneys' fees, losses, expenses, actions, causes of action, counterclaims, defenses, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable

---

[1]    Plaintiff has already switched counsel twice since filing this lawsuit.

remedies, rights to payment, or other liabilities (including a derivative claim) whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity, or otherwise[.]" [Bankr. D.I. 617-1 at ¶¶ 5.e. and 5.g.] (the "Settlement Agreement").  In the Settlement Agreement, Webb also agreed on behalf of himself and his agents and affiliates that he "shall not in any way publicly criticize, disparage, call into disrepute" ECP.  [*Id.* at ¶ 5.o.].  Webb executed this Settlement Agreement on behalf of his "present, former, and future direct and indirect parent companies, subsidiaries, predecessors, subsidiaries, shareholders, partners, officers, directors, members, employees, representatives, agents, attorneys, affiliates, successors and assigns, but excluding [Brutus], [DOGSA], and Kay Rieck ('Rieck')."  [*Id*. at ¶ 1(i)].  Yet, in direct contradiction of the unambiguous terms of the Settlement Agreement, DOGSA has now filed a Motion to Substitute Webb's wholly owned LLC, Alecto Capital, as the Plaintiff in this lawsuit, asserting near-identical claims against ECP to those settled by Webb based on the same exact events and alleged conduct— that ECP purportedly failed to disclose material facts to Brutus, inducing Brutus to approve certain contracts, which allegedly enabled ECP to exercise total control over Furie.  [*Compare* A.D.I. 13 at 10, 13–14 *with* Bankr. D.I. 283-2 at 8–9, 16–21, 44–49, 152–155].

## ARGUMENT

**I.     PLAINTIFF'S MOTION TO SUBSTITUTE SHOULD BE DENIED AS WHOLLY IMPROPER**

"Because joinder or substitution under Rule 25(c) does not ordinarily alter the substantive rights of parties but is merely a procedural device designed to facilitate the conduct of a case, a Rule 25(c) decision is generally within the district court's discretion." *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71–72 (3d Cir. 1993).  Accordingly, "a court may refuse to

4

substitute parties in an action even if one of the parties so moves." *Eastman Chem. Co. v. Alphapet Inc.*, No. CV 09-971-LPS-CJB, 2011 WL 13054223, at *3 (D. Del. Dec. 9, 2011) (internal quotations and citation omitted). The Court should refuse to do so here.

As discussed in ECP's June 18, 2024 letter to the Court, the Assignments at issue here are far from typical. [A.D.I. 42 at 1]. First, ECP was not made aware of either of the Assignments until ***eighteen months*** after the first Assignment occurred. [*Id.*]. And, without explanation, Plaintiff wholly failed to notify ECP of the second Assignment at the time it notified ECP of the first Assignment—even though such Assignment had ***already occurred*** nearly three months prior to that notification. [A.D.I. 42-1 at 2–3]. Indeed, Plaintiff waited yet ***another month*** to bring the second Assignment to ECP's attention and failed to explain why. [A.D.I. 42-1 at 2].

Second, the language of the first Assignment agreement ***itself*** shows the second Assignment to Alecto Capital was improper. Section II.2. of the Assignment agreement assigning DOGSA's claims to Alecto specifically provides that such Assignment was "subject to a fiduciary obligation for the benefit of the other shareholders with respect to shares not owned by [Alecto], as identified in the share register ('free float')," and thus that Alecto was "not authorized to [] assign to third parties the assigned claim of the free float." [A.D.I. 44-2 at 2]. Turning to Section V.2. of the first Assignment agreement, any "[a]mendments to this contract require[d] written form." [*Id*. at 3]. Plaintiff has not provided ECP or the Court with any amendments showing Alecto had the right to transfer DOGSA's claims to a third party, yet Alecto did just that, assigning the claims to Alecto Capital in violation of the first Assignment agreement just 14 months later. [*Id*. at 5].

The second Assignment agreement raises even more questions. Specifically:

A. Recital (3) states that Alecto Capital is affiliated with Alecto, but does not describe ***how*** the entities are affiliated. [*Id*.]. Though Webb, Alecto Capital's sole owner,

5

    is Alecto's registered agent, a review of the corporate records of Alecto and Alecto Capital provides no evidence of any corporate affiliation. *See* State of Alaska Certificate of Authority, Alecto Limited (Mar. 17, 2016), attached hereto as **Exhibit B**.

 B. Article 1(1) authorizes Alecto Capital to "(v) file criminal cases" against ECP, which is clearly ***prohibited by law***. [A.D.I. 44-2 at 5].

 C. Article 1(3) provides that Alecto Capital "will disburse the proceeds realized by the enforcement activities (after deduction of legal fees and settlement of debts of [DOGSA]) to the shareholders of [DOGSA]." [*Id*.]. Yet, the first Assignment agreement did not mention ***anything*** about deducting legal fees and DOGSA's settlement of debts. [*Id*. at 2–3]. Moreover, upon information and belief, DOGSA has been ***bankrupt*** since November 2023, meaning it likely has so much debt that its shareholders will not be able to receive ***anything*** from this action even if Plaintiff could somehow prevail on the claims Webb already settled. *See* German Oil & Gas Shareholders Sue ECP For USD 650 Million (April 26, 2024), https://www.kapital-markt-intern.de/start/aktuelles/deutsche-oel-gas-aktionaere-verklagen-ecp-auf-650-mio-usd/.

 D. Article 4.2. provides that "Alecto Capital shall undertake to collect from the shareholders of [DOGSA] contributions to the fees necessary for the enforcement of" the assigned claims. [A.D.I. 44-2 at 6]. But again, the first Assignment agreement did not mention ***anything*** about obtaining necessary fees from DOGSA's shareholders. [*Id*. at 2–3].

  Accordingly, although Alecto's Assignment of claims to Alecto Capital appears to breach the terms of Alecto's Assignment agreement with DOGSA, DOGSA had no reason to complain given that such Assignment to Alecto Capital added provisions that grossly benefit DOGSA at the expense of its shareholders. Because Alecto's Assignment of claims to Alecto Capital was in violation of Alecto's Assignment agreement with DOGSA, it is not at all clear that "Alecto Capital holds all of DOGSA's claims, rights, and interests relating to this adversary proceeding" as Plaintiff suggests. [A.D.I. 44 at ¶ 13]. The Assignment to Alecto Capital was wholly improper pursuant to the very terms of DOGSA's own agreement. Accordingly, the Court should use its discretion to deny Plaintiff's Motion to Substitute.

6

## II.   ALTERNATIVELY, PLAINITFF'S CLAIMS SHOULD BE DISMISSED AS PRECLUDED

Should the Court grant Plaintiff's Motion to Substitute, then Alecto Capital's claims must be dismissed under the doctrine of claim preclusion.  The Assignments are a smoke screen, disguising Plaintiff's effort to use the same parties to relitigate previously settled claims and thus avoid the need for Kay Rieck, the real puppet-master, to appear before this Court.  Indeed, this sleight of hand can be revealed by just looking at the timing of Alecto's Assignment to Alecto Capital compared to when Alecto Capital was incorporated—Alecto Capital was not incorporated until March 12, 2024, ***two-and-a-half months after*** Alecto assigned DOGSA's claims to the not yet existing company.  *See* Articles of Organization, Alecto Capital (Mar. 12, 2024), attached hereto as **Exhibit C**.

Moreover, given the indisputable evidence that Webb: (a) ***owns 100%*** of Alecto Capita; (b) already settled his identical claims against ECP; (c) is affiliated with DOGSA—Alecto Capital's predecessor-in-interest; and (d) plans to serve as Alecto Capital's primary corporate representative, the assigned claims now held by Alecto Capital should be barred by claim preclusion.  "Claim preclusion bars suit when three elements are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (holding claims against assignee were barred by claim preclusion, requiring dismissal of such claims) (internal quotations and citation omitted).  All three elements are clearly present here.

### A.    The Settlement Agreement between Webb and ECP was a final judgment on the merits.

The Settlement Agreement constitutes a final judgment on the merits in a prior suit.  *See Conceicao v. Nat'l Water Main Cleaning Co.*, 650 F. App'x 134, 135 (3d Cir. 2016) ("Judicially approved settlement agreements are considered final judgments on the merits for the purposes of

7

claim preclusion."). Claim preclusion is applied "as a consequence of settlement agreements," because, by doing so, courts "encourage settlements and serve[] the important policy of interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions[.]" *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 281 (3d Cir. 2014) (internal quotations and citations omitted).

Webb freely and willingly entered into the Settlement Agreement, which was both "comprehensive" and expressly disclaimed "relitigation of settled questions." *Id*. The terms of the Settlement Agreement waived "any and all claims," on behalf of Webb and all "present, former, and future direct and indirect parent companies, subsidiaries, predecessors, subsidiaries, shareholders, partners, officers, directors, members, employees, representatives, agents, attorneys, affiliates, successors and assigns[.]" Settlement Agreement at 2, 6–7. Further, the Settlement Agreement expressly stated that, "[e]ach Party agrees and covenants not to sue, or otherwise take any action against or with respect to any other Party hereto in connection with or in any way related to the Released Actions." *Id.* at 9. Indeed, the Settlement Agreement "led the parties to forego additional litigation in which they could have advanced their positions with the hope of obtaining what they perceived would be a more favorable outcome than the settlement agreement provided them." *Blunt*, 767 F.3d at 282 (internal quotations and citations omitted).

The Assignment of DOGSA's claims to Alecto Capital not only violates the terms of the Settlement Agreement, which contemplated and barred further litigation that relates in any way to Webb's released claims, but also attempts to waste judicial resources in pursuit of claims that have already reached a final adjudication on the merits.

### B.    The current litigation involves the same parties: Webb and ECP.

As the sole owner, manager and member and thus the only possible corporate representative of Alecto Capital, Webb is barred from taking a second bite of the apple and

relitigating these claims against ECP that he previously settled.  Claim preclusion requires that the parties be the same as the parties to the prior action or in "privity" with such parties, where privity "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." *Israel v. Pierce*, 235 F. Supp. 3d 598, 605 (D. Del. 2017) (internal quotations omitted).

Webb's relationship with Alecto Capital supports a finding of privity.  Webb's uncontroverted affiliation with Brutus and DOGSA,[2] his prior position as registered agent for Alecto in Alaska, and his presumptive future role as corporate representative of Alecto Capital alone could be dispositive in demonstrating privity between the parties. *See McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 122 (3d Cir. 2017) ("Privity requires a prior legal or *representative relationship* between a party to the prior action and the nonparty against whom estoppel is asserted.") (emphasis added) (internal quotations and citation omitted); *Taylor v. Sturgell,* 553 U.S. 880, 895 (2008) ("[P]reclusion is [] in order when a person who did not participate in a litigation later brings suit as the designated representative or agent of a person who was a party to the prior adjudication").  Indeed, as Plaintiff acknowledges in its July 8, 2024 letter to the Court, "privity has traditionally been understood as referring to the existence of a substantive legal relationship, such as **by contract**, from which it was deemed appropriate to bind one of the contracting parties to the results of the other party's participation in litigation." [A.D.I. 43 at 3 (citing to *McLaughlin*, 686 F. App'x at 123) (emphasis)].  There has clearly been a contractual relationship between Webb and the various entities that have held, and the entity that now holds, the claims against ECP in this lawsuit.

---

[2]    Settlement Agreement at ¶ 1(i) (demonstrating Brutus, DOGSA, and Kay Rieck are affiliated with Webb).

But beyond these contractual relationships, Webb is also the **sole member, manager** and ***owner*** of Alecto Capital.  The Third Circuit has previously considered a similar situation in *Gimenez*, where the plaintiff brought claims individually arising out of a stock sale transacted by the defendant for plaintiff's corporation. *Gimenez v. Morgan Stanley DW, Inc.*, 202 F. App'x 583, 584 (3d Cir. 2006).  However, the plaintiff had previously brought claims on behalf of his corporation that were "based on the same set of facts," and dismissed with prejudice. *Id.*  The Court held that the plaintiff's subsequent individual claims were barred under claim preclusion, as, although the prior case was brought on behalf of plaintiff's corporation, "that case's disposition precludes [plaintiff] from subsequently bringing the same suit on behalf of himself." *Id.*  Here, Webb previously pursued claims as an individual "based on the same set of facts" that DOGSA's assigned claims now rest on. *Id.*  Just as the court barred the *Gimenez* plaintiff from pursuing claims through the plaintiff's corporation and individually in a subsequent proceeding, Webb cannot have a redo of the prior litigation by pursuing the same claims against ECP through Alecto Capital after already settling those claims individually with ECP over four years ago.

Similarly, the Third Circuit's holding in *Bertoli* is instructive here.  In *Bertoli*, the plaintiff sought individually to recover various interests from the estate of his deceased brother, administered in a chapter 11 bankruptcy proceeding, while simultaneously seeking a declaratory judgment in state court to invalidate his brother's transfer of property out of a partnership in which plaintiff was general partner. *In re Bertoli,* 812 F.2d 136, 137 (3d Cir. 1987).  The court held that plaintiff's "role in the state court litigation as general partner of [the partnership] bar[red] relitigation of the same claims" in bankruptcy, as plaintiff did not "identif[y] any respects in which the claims asserted and the interests he pursued as a general partner in the state litigation differ, either as a matter of fact or as a matter of law[.]" *Id.* at 140.  Like the *Bertoli* plaintiff, Webb

10

previously pursued these claims individually and has not identified any respects in which the claims previously settled differ "either as a matter of fact or as a matter of law" from those now pursued by DOGSA and assigned to Alecto Capital. Although the second Assignment agreement suggests Alecto Capital will act "only in the economic interest of the shareholders of" DOGSA, Alecto Capital is the "majority shareholder" of DOGSA. [A.D.I. 44-2 at 5 (Article (1)(1) and (1)(3))]. Thus, just like in *Bertoli* where the court found "Bertoli's interest in his individual capacity [in the bankruptcy] was identical to his interest as general partner and custodian for the limited partners, the capacities in which he litigated in state court," Alecto Capital's interest, i.e. Webb's interest, in his individual capacity in the Furie Bankruptcy is identical to his interest as the sole owner of DOGSA's majority shareholder in this litigation. *Id.*, n.3.

Just as the Third Circuit barred plaintiffs from relitigating the claims in *Gimenez* and *Bertoli*, Webb is barred from using a corporate mask, Alecto Capital, to again pursue these claims against ECP. This situation is akin to a corporate veil—Alecto Capital is a "mere instrumentality" of Webb. "Alaska law establishes six factors for determining if a corporation is a 'mere instrumentality' of one of its shareholders: (1) whether the shareholder owns all or most of the stock; (2) whether the shareholder subscribed to all of the capital stock or caused the incorporation; (3) whether the corporation is grossly undercapitalized; (4) whether the shareholder uses the property of the corporation for his or her own benefit; (5) whether the directors of the corporation act independently of the shareholder; and (6) whether the formal legal requirements of the corporation are observed." *Nerox Power Sys., Inc. v. M-B Contracting Co.*, 54 P.3d 791, 801–02 (Alaska 2002) (internal quotations and citations omitted). "It is not necessary for all six factors to be satisfied before instrumentality can be found." *Id*. Webb owns 100% of Alecto Capital and organized its incorporation, satisfying (1) and (2). *See* Ex. B; Ex. C. He is also the only official,

suggesting there are no directors to act independently of Webb, satisfying (5). *See* Ex. B. While ECP does not have enough information to assess factors (3)-(4) and (6), at least three of the six factors show Alecto Capital is a "mere instrumentality" of Webb. As the Supreme Court has held, "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." *Taylor*, 553 U.S. at 895.

### C. This adversary proceeding is based on the same causes of action as the claims Webb previously settled against ECP.

The claims in the present action alleged by DOGSA against ECP are nearly identical to those previously litigated and settled by Webb in his individual capacity. At the outset, courts take a "broad view of what constitutes the same cause of action." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) (internal quotations omitted). Specifically, the claims brought in the two actions do not need to be identical, but rather "[w]hen considering whether a cause of action is the same, [courts] focus on the essential similarity of the underlying events giving rise to the various legal claims." *Tucker v. HP Inc.*, No. 23-2008, 2023 WL 5287663, at *1 (3d Cir. Aug. 17, 2023) (internal quotations and citation omitted). The claims themselves may differ between the two actions, and in a claim preclusion analysis it is not dispositive that "a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Sheridan*, 609 F.3d at 261.

There is a strong "essential similarity of the underlying events" giving rise to DOGSA's claims and Webb's settled claims. The below table identifies just a handful of the instances of overlap between the factual assertions and claims brought in the present action by DOGSA, now assigned to Webb's Alecto Capital, and the claims Webb settled previously with ECP under the Settlement Agreement.

12

| DOGSA's Claims in Present Action (Assigned to Alecto Capital) | Webb's Settled Claims |
|---|---|
| "Defendants failed to disclose material facts to Brutus when negotiating various transactions and operational decision; the most detrimental being to induce Brutus to approve the engagement of Ankura and PRA, which enabled ECP to exercise total control over Furie. ECP omitted material information about its relationship with Ankura and its desire that Ankura be engaged to oversee Furie's operation. After reasonably relying on Defendants' fraudulent omissions, Brutus was unable to properly manage Furie and Brutus was irreparably harmed… [ECP] failed to disclose material facts to Brutus to induce Brutus to approve the engagement of Ankura and PRA, which enabled ECP to exercise total control over Furie." [A.D.I. 13, ¶¶ 53-57, 60]. | "Without the advice or consent of sole member manager Rieck, the ECP Defendants [] and Ankura began negotiating an engagement letter for the engagement of Ankura as a management consultant for the company… By the negotiation and execution of these agreements [with Ankura], the ECP Defendants and ECP Management Team embarked on a joint effort and conspiracy to effect a hostile take-over of the Debtors' management, to the extreme detriment of Brutus (the company's German parent), the Debtors' bankruptcy estates and creditors, the Davis Group WI Owners, and the ORRI owners, including the Webb Family Trust." [Bankr. D.I. 283-2, ¶¶ 125(g), 126]. |
| "Under threat of foreclosure from ECP, Brutus consented to Furie's engagement of Ankura and PRA." [A.D.I. 13, ¶ 40]. | "[U]nder the threat of foreclosure and/or an involuntary bankruptcy by the ECP Defendants, Rieck had no choice but to capitulate to the ECP Defendants' threats, and agree to… the approval of the engagement of Ankura as the company's management consultant, and the approval of the engagement of PRA[.]" [Bankr. D.I. 283-2, ¶ 125(k)]. |
| "Having installed Ankura as its proxy, and to ensure that no one could interfere with ECP's control of Furie's operations, the April 12, 2018 amendment and restatement of the ECP Credit Agreement included a negative covenant that prohibited Furie from terminating, amending, modifying, supplementing, or waiving Ankura's engagement letter." [A.D.I. No. 13, ¶ 45]. | "To ensure that Rieck/Brutus would be unable to interfere with ECP's control of the Debtors' operations through the ECP management team, ECP coerced and bullied Brutus/Rieck, under threats of impending foreclosure and involuntary bankruptcy, to agree to and restate the ECP Credit Agreement and Debtors' company agreements in order to memorialize draconian provisions[.]… ECP incorporated provisions into the Amended and Restated Credit Agreement dated April 12, 2018, to prohibit the Debtors from terminating, amending, modifying, |

13

| DOGSA's Claims in Present Action (Assigned to Alecto Capital) | Webb's Settled Claims |
|---|---|
| | supplementing or waiving Ankura's engagement letter or the PRA Management Agreement." [Bankr. D.I. 283-2, ¶¶ 49, 50]. |
| "Defendants worked alongside other entities and individuals, including, but not limited to, Ankura, PRA, Elder, and Pinsonnault, to unlawfully dominate and control Furie—driving Furie to insolvency and bankruptcy." [A.D.I. 13, ¶ 61]. | "[These claims] arise[] out of a deceptive scheme perpetrated by … the ECP Defendants, to wrongfully take-over, dominate and control the management of the Debtors[.]" [Bankr. D.I. 283-2, ¶ 4]. |
| "ECP and Ankura made choices that effectively destroyed Furie's business and wiped out the vast majority of the proven-developed-producible (PDP) gas reserves in the Kitchen Lights Unit." [A.D.I. 13, ¶ 22]. | ECP engaged in "destruction of over 128 billion cubic feet of proven natural gas reserves (worth in excess of $830 million) by over producing several [Kitchen Lights Unit] wells." [Bankr. D.I. 283-2, ¶ 70]. |
| ECP withheld "from Brutus the benefit of the parties' contractual relationship" in violation of the duty of good faith and fair dealing, and through "material omissions and other conduct executed a scheme to wrest control of Furie from Brutus." [A.D.I. 13, ¶¶ 65, 67]. | "ECP Defendants… engaged in inequitable conduct vis-à-vis Plaintiffs, the Debtors, their bankruptcy estates and their creditors, amounting to multiple breaches of the covenant of good faith and fair dealing[.]" [Bankr. D.I. 283-2, ¶ 122]. |

Thus, it is evident that "the facts underpinning [Plaintiff's] current action are substantially similar (if not identical) to those presented in [the Furie Bankruptcy by Webb]." *Conceicao*, 650 F. App'x at 136 (holding the action was "premised upon the same 'cause of action' as the prior lawsuit" and was therefore "barred by the doctrine of claim preclusion").

The claims settled by Webb individually are the same causes of action as the present DOGSA claims now assigned to Alecto Capital. A court's analysis on whether the causes of action are the same is guided by several factors, including "(1) whether the acts complained of were the same; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same; and (4) whether the *material* facts alleged are the same." *Sheridan*, 609 F.3d at 261 (internal quotations and citations omitted) (emphasis in original). However, no one factor is dispositive, and even where the factors may "point in both directions," a court may still find claim preclusion applies. *See id.* (finding claim preclusion applied even when factors "point in both directions," because "this does not change the fact that the underlying assertions giving rise to each claim were the same"); *Churchill v. Star Enters.*, 183 F.3d 184, 195 (3d Cir. 1999) (holding claim preclusion barred claims where "the acts complained of were the same, and the evidence at the trial would have been the same" and the "thrust of the two complaints remained practically identical").

Plaintiff's claims are premised on the *same acts* as Webb's prior claims, allege the *same theory of recovery*, allege the *same material facts,* and would require the *same witnesses and documentation* to prove. *Sheridan*, 609 F.3d at 261. The "thrust" of Plaintiff's complaint in the present action is "practically identical" to that of the claims Webb previously brought and settled with ECP. *Churchill,* 183 F.3d at 195. Plaintiff's claims rest on the same exact allegations. Because all of the elements of claim preclusion are present in light of DOGSA's Assignment of claims to Alecto Capital, the claims should be barred from proceeding.

## CONCLUSION

For the reasons stated herein, the Assignments of DOGSA's claims to Alecto and then to Alecto Capital are wholly improper. If the Motion to Substitute is granted, claim preclusion necessitates the dismissal of the claims. The Plaintiff asks this Court to turn a blind eye to the

corporate mask Webb is now wearing through Alecto Capital, in pursuit of relitigating the same causes of action he already settled against ECP. Accordingly, ECP requests that this Court deny the Motion to Substitute as improper, or, alternatively, dismiss the claims as barred by claim preclusion.

Dated: July 22, 2024
Wilmington, Delaware

/s/ Robert C. Maddox
**RICHARDS, LAYTON & FINGER, PA**
Mark D. Collins (No. 2981)
Robert C. Maddox (No. 5356)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  collins@rlf.com
  maddox@rlf.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anna Rotman, P.C. (admitted *pro hac vice*)
609 Main Street
Houston, Texas 77002
Telephone:  (713) 836-3600
Facsimile:  (713) 836-3601
Email:  anna.rotman@kirkland.com

- and -

Chad Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  chad.husnick@kirkland.com

*Co-Counsel to ECP*